3-24-0041 U.S. Bank Trust National Association et al. Appellee v. Cynthia Logan, Appellant. All right, Mr. Supporta, if you're ready, you may proceed. Thank you, Your Honor, and may it please the Court, Stephan Supporta on behalf of the Appellant Cynthia Logan. This case comes before the Court with a very unique circumstance that I frankly have not seen before. I don't know if the Court has. It's the second time the case is before this Court. The first time resulted in a Rule 23 order being handed down April 3, 2019, and reported. It was Appeal No. 318-0324, and it was reported in 2019 Illinois Appellate 3-180324-0. While that appeal, it was interlocutory in nature, was pending before this Court, the Bank filed a motion for voluntary dismissal with the Clerk of the Circuit Court, did not give notice to Ms. Logan. Had she known such a motion was filed, she would have immediately notified this Court and move for a dismissal of the prior appeal as moot. Mr. Supporta, let me ask you a question. You filed on your appeal on this issue before us now on the 1401 petition, the granting of May 17th of 22, and you did not file your notice of appeal until well past the required deadlines under 304B and 303. Can you tell me what jurisdiction the Court has to go forward on this appeal? Thank you, Your Honor. I did not appeal the adverse ruling against my client on the 214-01 petition. The unique circumstance here, and I'm asking the Court to keep this in mind, this has nothing to do with the 214-01 petition being granted. It's a separate cause of action. We did not appeal that adverse ruling. What I'm asking the Court to keep in mind is that this Court and the Circuit Court are two separate tribunals. However, they were both similarly affected by the filing of that motion for voluntary dismissal. Mr. Supporta, I'm looking at your notice of appeal in which you indicate that you are, in fact, appealing the May 17th, 2022 granting of the 214-01 petition to vacate. Yes. If that was listed in the notice of appeal, Your Honor, there's no basis for it. I did not set forth any argument in my briefs for it that granting of the 214-01 has been abandoned. Judge Jars granted that. It's a separate proceeding. It's completely separate and apart from this proceeding. Okay. Then you ask us, though, in your opening brief, to reverse the orders entered in January 2018. Okay. Can you tell me under what authority this Court has the ability to even consider that? Under the Illinois Constitution, Your Honor, this Court derives its jurisdiction, as the Court knows, from Article VI, Section 6. It's where the Court's appellate authority derives. The Circuit Court derives its authority from Article VI, Section 9. The bottom line is there has to be a litigant that's presenting a justiciable issue before the Court. What I'm saying is when the bank files their motion for voluntary dismissal, the Clerk of the Circuit Court divested this Court of its jurisdiction under the Illinois Constitution because it removed a justiciable issue from consideration. Other than support on constitutional law, which I appreciate the argument, is there a single case that stands for the proposition that we're divested of jurisdiction in this context? Haven't found one, Your Honor. Haven't found a fact pattern similar to this. But the fact of the matter is they filed a motion in the Circuit Court. They didn't bother to give this Court notice. Let me ask a follow-up question. Yes, Your Honor. When was the motion granted in relation to the appellate Court's opinion? It was granted upon remand to the Circuit Court. Even if we were to accept your theory, my problem is that the mere filing of a motion to dismiss doesn't do anything. Even if I accepted that a trial court granting a motion to dismiss divested us of jurisdiction, which I really don't think would be the case. Hold on. We can't argue that because it didn't happen. The mere filing of a motion to dismiss, how does that do anything as relates to our jurisdiction? Okay. First of all, under the Constitution, this Court has jurisdiction only to review the Circuit Court, and the Circuit Court has jurisdiction to hear justiciable matters. So when you read these sections together, when the plaintiff in the case files a written motion and says, we're not pursuing this foreclosure matter any further, that filing in and of itself takes a justiciable issue out of contention at that point. Not until the trial court rules on it. No, the trial court couldn't rule on it. This was a very surreptitious move on the part of the bank. They had an appeal pending against it. It had been pending for over a year and a half, as I recall, and they file a motion for voluntary dismissal. They don't give anybody notice. They don't give my client notice. They don't give the Circuit Court, or I'm sorry, they don't give the clerk of this court notice. And when they do that, I'm saying that they are going out of record, at least in the clerk of the Circuit Court, that they no longer wish to pursue this foreclosure case. But you agree that at that point, the Circuit Court didn't have jurisdiction because it was still within the hands of the appellate court. That's right. And that's why I make a distinction between the Circuit Court and this court. I know it's a unique circumstance. I know it's a unique theory. But what I'm telling you is when the bank expresses its desire not to pursue the case any further and does not give my client notice, this was almost like appeal insurance. Had the appeal gone against them, they could have waived that file stamped copy of their motion for voluntary dismissal and say, wait a minute, wait a minute. We're taking a voluntary dismissal of this case without prejudice with leaves to refile within a year. But they gave nobody notice. You can't do that. It's a fundamental violation of due process. My client was never given notice, never given an opportunity to be heard. And what this court ended up issuing the first time around, unknowingly, was an advisory opinion. And under the Illinois Constitution, you can't do that. And under the Illinois Constitution... How do you determine it wasn't an advisory opinion? It's an advisory opinion because the bank expressed that it was no longer pursuing the foreclosure case. It was an advisory opinion. And it raises a constitutional issue that cannot be waived. And we're raising it now. I think that this panel is entitled to know what happened before. It's entitled to know that this motion was filed surreptitiously without notice to my client and without notice to this tribunal. And we're raising it now. And it's not an issue that could be waived because it raises a constitutional issue. So, what we have... And I'm not saying it's the fault of this panel. This panel didn't know. This court didn't know. They didn't file in this court. But they stated that they were no longer going to present the justiciable issue before the tribunal to be heard. And under the Illinois Constitution, that in and of itself divests this court of jurisdiction. It constitutes inequitable conduct on the part of the bank. And it's in a long line of inequitable conduct. The first time around, when Judge Carey was presiding over this case in the circuit court, and he granted a 304A finding and allowed Ms. Logan to take that appeal on a pro se basis. He stayed any judicial sale. This is post judgment and pre judicial sale. This bank went on and scheduled a judicial sale with the Will County Sheriff's Office. In contravention of the procedural posture of the case, the sale went through. Ms. Logan had to go back into court, a pro se litigant thing. And Judge Carey ordered the Will County Sheriff to remit, I think it was $180,000. That was the high bid at the sale to the third party purchaser. So that was an egregious act of misconduct and inequitable conduct. And so was this surreptitiously filed motion for voluntary dismissal. That was a submarine motion filed for the sole purpose of purchasing appeal insurance. And it resulted... So Mr. Support, I get that as, it would seem like a strange way to get appeal insurance, but I get the argument. But isn't it equally likely that it's just an incompetent situation where we these gigantic banks with ridiculous numbers of mortgages, and this just gets filed for some reason and nobody really understands why. I mean, one wonders whether the bank was even aware that they filed it. Absolutely not, Your Honor. They ended up bringing a 213-01 motion outside of 30 days, and they reiterated why the case was voluntarily dismissed. Because the bank stated they no longer wish to proceed. Now they want to proceed. Was it also inadvertent that they gave nobody notice of that? You file a motion, you give notice of motion to the other side. We were denied the opportunity to do anything. To do what? To do what, Mr. Support? To bring it to the attention of this court and let the court know that they were taking a voluntary dismissal. They had moved for a voluntary dismissal. But the mandate didn't issue, hadn't issued, and wouldn't, in fact, issue until October. So the trial court... Excuse me, sir. The trial court did not have jurisdiction because the mandate had not returned it until October of 2019. This motion was filed while this case was pending and unresolved in this court. My client was never given notice of motion. Had she been given notice of motion, she would have brought it to the attention of this tribunal. And by the way, if that was brought... And argued at that point... Mr. Support, if I may interrupt. If that was... Let's say that happened. Notice was provided to your client. Hey, the bank has filed a motion to vacate foreclosure and dismiss the case. And that was brought to the attention of the appellate court. It's the functional equivalent of toilet paper. It means nothing because it hasn't been ruled on. It's a request made to a tribunal that doesn't have jurisdiction to consider it. And it would be dismissed without prejudice for the bank to bring the same motion before us, but nothing else would happen. That being brought to our attention would have had zero consequence. I disagree respectfully, your honor. It's indicia that the bank did not want to proceed with the foreclosure case. Had my client received notice of that, she would have come before this tribunal and said, my appeal is moot. They're not going forward with this. They filed it in the wrong court, but it's indicia of the fact that they don't want to proceed with this. When did you learn that that motion had been filed? After the case was remanded back down there. I was not retained in the case until after the remand from the first case. And it was when they filed a 213-01 motion to vacate the vacation of the foreclosure case. That motion was filed outside of 30 days. That's when the client retained my office and said, here's what's happened. What can I do? I said, well, Judge Jarvis is not going to grant this motion under 213-01 because he no longer has jurisdiction. He dismissed this case long ago. And that's exactly what happened. It was after that 213-01 petition was denied that they brought a 214-01 petition. Mr. Supporta, can I ask a question? I just want to make sure procedurally I'm understanding what you say would have happened. So you're saying that if your client had received notice of this motion, she would have filed a motion with the appellate court dismissing her appeal. Now, of course, that just reverts everything back to the trial court. And the trial court still has not ruled on the bank's motion, right? So what do you think would have happened below? Case would have been dismissed and they would have had the opportunity to refile. Then we would have defended a second foreclosure case, which would have been their second bite of the apple under COBOL. But that didn't happen. Fundamentally, she was not given notice of this motion. She could not have brought it to the attention of this court. Not only was she entitled to notice, this court was entitled to notice. What this court would have done with it, I'm not a mind reader, but for God's sakes, you're entitled to know what's going on. You're entitled to know that the bank no longer wishes to proceed with the case. That's why. You will have an opportunity in Mr. Support. Hold on one second. Does either Justice Peterson or Justice Stabenport have any questions at this time? None. We'll give you an opportunity, Mr. Support, in reply. Yeah, I mean, we've got other issues I haven't touched on. That's fine. Mr. Amberton. May it please the court. My name is Josh Wilmington and I'm here on behalf of the appellee U.S. Bank Trust National Association, not in its individual capacity, but solely as Delaware trustee and U.S. Bank National Association, not in its individual capacity, but solely as co-trustee for Government Loan Securitization Trust 2011-FV1. Your Honor, the defendant essentially raises three challenges on appeal. They challenge, they make a series of challenges based on inequitable conduct. They challenge, they make a series of challenges based on a theory of unclean hands. They also attack the post-judgment interest that was approved or that was awarded when the trial court granted plaintiff's motion to confirm sale on October 3rd, 2023. But before I address these three points, I do want to address that at the trial court level, when the defendant filed its response to the motion to confirm sale and when she filed her motion to vacate the order confirming sale on November 2nd, 2023, the only relief that she requested was the relief that the order confirming sale be vacated. So now she's improperly requesting on appeal that not only the order of sale be vacated, but every order essentially entered in this case be vacated and then the case be dismissed. Mr. Emberton, may I ask you a question, please? Can you tell me the basis that the court essentially found that when the plaintiff filed his motion to dismiss, when the motion to dismiss was granted eight months later, essentially the plaintiff could have changed that, changed its mind at that point anyway, and which it would have likely have done so. And therefore, in addition to plaintiff's arguments, the court granted the motion or granted plaintiff's 14-1 petition because the motion to dismiss, as we claim, was inadvertently filed without the authorization from our client or the intention to have the case actually dismissed. So accepting for the moment that it was inadvertently filed, is the appellant correct that opposing counsel or no one was notified of the filing? Well, he is correct. There was no notice of motion filed. Why? It was inadvertently filed but there was no direction in our notes that it be submitted for filing to the legal system at that time. And so there was no notice of filing prepared because of that and no notice of motion prepared. Well, that's a lot of inadvertences. Let me just ask this, what do you say to appellant's argument that you were quote-unquote buying appeal insurance? It's interesting argument. Well, I guess I would say, Your Honor, that argument, they haven't produced any facts to establish that. I mean, the defendant could likewise... Just an inadvertent filing and an inadvertent failure to provide notice. And the defendant could likewise argue that the court lacked jurisdiction when the motion was filed, that we would then need to refile that motion one-page notice so it wouldn't have taken any time once the mandate was issued and filed in the first place. But regardless... Well, the court clearly thought it had jurisdiction because it granted the motion after remand. It wasn't bothered by the fact that it lacked jurisdiction when it was actually filed. And it is our intention that the motion was never intended to be called before the court. There was no notice of motion being filed and that we lacked the authority to withdraw that motion since the trial court was divested of jurisdiction when the case went up on appeal. So in other words, we're saying that there's nothing that we could essentially have done to withdraw that motion or otherwise correct the record until the appeal came back down. Mr. Emberton, let me draw your attention to another issue that you raised earlier, which is the interest, okay? Can you tell me how post-judgment interest can accrue when no judgment is in effect? So, Your Honor, we argued in our response brief that essentially when the court granted it on May 17, 2022, when it granted our petition to vacate, that essentially had the effect of putting the parties back in the position they were as if the judgment of foreclosure was never entered. I mean, it's not the judgment of foreclosure, I apologize. Essentially because essentially stating that as if the dismissal order was never entered. What does that mean to you, putting the parties back like to their original status? What do you think that means, that original status? The original status means that essentially that the judgment, I'm sorry, the dismissal order that was entered on December 3rd essentially held for naught and it is if that dismissal order wasn't entered in the case or didn't exist in the case. Okay. I do. So, and this may be where Justice Davenport's going, so I apologize if I'm stealing the question, but so the judgment interest traditionally would run up until the time of the sale, correct? That's correct. Post-judgment interest up until the date of sale. Now here, your ability to effectuate a sale was impacted by your inadvertent filing, correct? That was correct. Why should, from an equity standpoint, the appellant eat all of that time in terms of interest? Well, as an initial matter, the defendant had possession and use of the property during that period. That is a question I have. When did the appellant vacate the property? It's my understanding that the appellant, there's nothing in the court record that states when the appellant ended up vacating the property. Well, are you suggesting that when the property was initially sold way back when the first time that the appellant was still there? Well, there's nothing in the court record that, to that effect, that she was still there after the June 7, 2018 sale. So to that effect, I couldn't raise the factual argument. Well, is there anything in the record that supports the fact that she was there all the way through the sale, the second sale? Well, there's nothing in the record to that effect. Is that what you would base the fairness of charging interest during the period of time where you precluded a sale, the fact that she's still living there? No, but if the case was voluntarily dismissed, she would still be liable for the interest that was occurring pursuant to the mortgage. And the defendant's argument is essentially stating that interest should be waived altogether, which would be the case. Well, you would agree that, generally speaking, you have a duty to mitigate. You can't sit there and say, OK, great, you know what? 9% is a good return on my investment, so I'm going to wait five years to do the sale and collect the 9% instead. You can't do that, right? You have a duty to mitigate and sell this thing as quickly as you can. Yes, but in this case, something you did inadvertently did delay the ability to mitigate or sell. Would that be a fair characterization? I would argue that much of the delay was a result of the litigation of 1402-1401. Well, that may be, and maybe we'll look at that, but some of it, at least, is attributable to this inadvertently filed motion that was granted. And I would respond that the court ruled on May 17, 2022, which wasn't, the defendant didn't appeal that ruling, that there was a meritorious basis for our 1401 petition and based on the fact, in part on the fact that the December 3, 2019 dismissal order was entered without notice to the plaintiff and it wasn't called upon, wasn't called for hearing by the plaintiff or notice wasn't sent to the defendant. So the plaintiff would argue that the delay wasn't necessarily attributed to any misconduct by the plaintiff, since it didn't intend or have the motion to dismiss be called for hearing or the order entered. I do want to address, before I go into the arguments about inequitable conduct and plain hands, I do want to address a little bit the argument that the defendant raised about post-judgment interest. Essentially, again, the defendant never, the defendant essentially argues that post-judgment interest that accrues from the date of judgment to the date of the order, the date of sale, or if not the order proving sale, plaintiff shouldn't be granted interest until the deficiency judgment is determined. However, I do want to point out that issue, that specific issue wasn't raised in his pleadings in response to the motion to confirm sale. In addition, I do want to point to the fact that as the defendant cited in his case, he cited to the City Mortgage v. Charlotte case, and we cited to the BAC v. FOCA case, both of which stand for the proposition that post-judgment interest from the date of the judgment of foreclosure and sale to the order proving sale is properly included on the order confirming the sale. Specifically, under the Charlotte case, essentially held that a Rule 304A finding made the judgment of foreclosure and sale a final and appealable order, which therefore under Section 1303, what judgment interest would properly accrue. Here on May 1st, 2018, the defendant did get her own Rule 304A findings, and therefore, the facts are analogous to Charlotte, and based on that position alone, we'd ask the court to affirm its prior ruling in Charlotte here and affirm the trial court's order granting post-judgment interest. Even if that wasn't enough for the court to grant post-judgment interest from the date of the judgment of foreclosure and sale to the date of the order proving sale, the court could turn to the FOCA case, which essentially found that under Section 1504 D.3 provides that statutory interest provides that statutory interest should be is that the deemed allegation of the complaint includes an allegation that interest can be collected pursuant to the mortgage or pursuant to a statutory interest rate from the date the foreclosure judgment is entered. I do want to then address the defendant's second argument. The defendant, as we previously mentioned, the court talked about the post-judgment interest that occurred between when the case was dismissed and when it was reinstated, but I do want to point out in the defendant's initial brief, their request to have the interest reduced didn't properly, essentially, was asking to have the interest reduced up to amount of $44,000, which in this case, I don't think is a proper amount of post-judgment interest to be reduced by. We cited the Kelch v. Watson case for the proposition that the effect of vacating an order is to render it void and to put the parties back in the position that they were prior to its entry. Here on May 17, 2022, the court granted our 2-14 moment petition, vacated that dismissal order, and as cited in the Kelch case, they cited the Black Laws Dictionary, which essentially defines the term vacate to set aside or to render an act void. In this case, it would be rendering the dismissal order with the December 3rd dismissal order void and putting the parties into the same position as if judgment had existed all the way up through the order of affirmative sale. Mr. Eberton, can I ask you to address the issue on the constitutionality that Mr. Porter raised on his brief of the inability to secure an appeal bond and that his client had no ability to do this on an appeal bond and raises that constitutional argument. Can you address that, please? Yeah, you're on the defendant's side of the Jack Spring case and their appeal. And in that case, the court didn't, that was a forcible detainer act case. And even in that case, the court found that the right to say the enforcement is independent of the defendant's right to appeal. And going further, there was a superseding event which occurred when the property was sold and then deeded in the final order confirming sale to JGR Investments. Therefore, the court has to balance the constitutional considerations of the new, of the party that was not party to the proceeding with the constitutional, with which, with the due precedent for the constitutional considerations of the defendant. And that's sort of why the only Supreme Court rule 305 was put into place. And so that way I rest on that argument if the court has any follow-up questions. Very well, Mr. Emberton, thank you. Mr. Supporta, reply. Mr. Supporta, you're muted. Thank you. Regarding the 214-01 discussion with counsel earlier, he said that the circuit court found that plaintiff could have changed its mind anyway between the time they had directed that the case be dismissed because they didn't want to proceed with the foreclosure, then they changed their mind. They said, we want to go ahead and proceed with the case. Their you know, only option when they're taking a voluntary dismissal is to take that dismissal without prejudice and refile a new case. But to say that they could just change their mind, that will within the same case, is just, that's not what the law is. With regard to the deficiency judgment, we're asking, because there was no judgment in effect between January 30, 2018 and April 18, 2023, we're asking that the court vacate $135,170.82 and we cite the Sharlow case, but we rely on Justice O'Brien's dissent, which I think makes more sense. You can't charge interest until you know that the asset isn't enough to cover the amount of the judgment, then you find out what the deficiency is, etc. We also cite Callahan and Thatcher opinions in our brief. Finally, there was early on when counsel did not get to this, but I think it's appropriate that I address it without waiving the fact that they may have given up their rights. They did file a motion to dismiss this appeal because the house was sold. It was under 305k, I believe. We briefed that issue. We cited the Herzog case to this court that stands for the proposition, even if the asset is sold, it doesn't moot the appeal that a homeowner is allowed to seek restitution, which is exactly what we're doing here. Because there's been so much inequitable conduct, the sale should not have been confirmed under 15-1508b-4. I don't think I addressed that issue the first time around. Counsel, did you seek a stay? A stay of what? The sale. I'm sure we did. Okay. Right now, I can't recall, but the point is that the court did confirm the sale, and under 1508b-4, when you've got so much inequitable conduct that I've already gone over, in this case, under McCluskey, Deal, and Espinoza, which we cite in our written submissions, the sale should not have been confirmed. Because the sale should not have been confirmed, part of the restitution we're seeking is a judgment against GJR Investors LLC for the profit they made when they flipped this house. After we filed the notice of appeal, after we filed our opening brief, they went ahead and sold the house. They knew the appeal was pending. At one point in the motion practice before... Weren't they good faith purchasers? No, I don't think so. Under the law, not under... All right. Sure. They went to the sale, and they did what they did. They purchased the property. What I'm saying is that they filed a petition for leave to intervene in the circuit court. They never called that for hearing. There were a couple of orders that mentioned they were present. Before this court, I brought a motion for a finding that they lacked standing to be before the court, and the court denied that motion and said, you know, you recognize them in orders in circuit court, so you sort of treated them as a party defendant. They're properly before the court. They have not filed any briefs in this case. They didn't file a response brief to our opening brief. And after our opening brief was filed, they sold the house, and they turned a $146,000 profit. So part of the relief we're seeking, not only the vacation of the prior order from this court, the orders of the circuit court, and the alternative, if courts can uphold this, we are seeking restitution. We're asking that the post-judgment interest be reduced by $135,170.82. And we're also asking that GJR Investments' profits from the sale of the house be disgorged in that amount of $146,000. That was equity that Ms. Logan lost through these proceedings. Mr. Support, if you could wind it up. Your light's on. Okay. I want to thank the court. If the court has any other questions, I mean, I would think that my client's due process rights have been violated here. It reminds me, with no disrespect, people fighting an addiction, they say, well, I slipped and I backslid or whatever. It was a mistake. You don't inadvertently draft a motion. You don't inadvertently file a motion. You certainly don't do that without giving notice to the other side. All right. Well, we thank both sides for spirited argument. The court will take the matter under advisement and issue a decision in due course.